UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


ANASTACIO ECHEVERRIA-RUIZ                              MOVANT/DEFENDANT


v.                                                CRIM. ACTION NO. 3:09-CR-179-CRS
                                                  CIV.  ACTION NO. 3:16-cv-00597-CRS


UNITED STATES OF AMERICA                          RESPONDENT/PLAINTIFF


**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION**

**FINDINGS OF FACT**


Anastacio Echeverria-Ruiz is a federal prisoner.  On October 13, 2010, Echeverria-Ruiz

entered a plea of guilty pursuant to a Rule 11(c)(1)(B) plea agreement[1] to both counts of a 2-

count indictment.[2]  Count 1 charged Echeverria-Ruiz and 5 other criminal defendants with a

conspiracy to possess with intent to distribute 5 kg or more of cocaine in violation of 21 U.S.C. §

846.  Count 2 charged Echeverria-Ruiz with unlawful re-entry to the United States following

deportation in violation of 8 U.S.C. §§ 1326(a) and (b)(2).

As part of his plea agreement, Echeverria-Ruiz knowingly and voluntarily waived his

right to direct appeal of his conviction and sentence, except for his right to appeal the sentence

imposed if the District Court departed from the applicable advisory sentencing guideline range,

---

[1] (DN 134, Plea Agreement).

[2] (DN 30, Indictment).

1

*as determined by the Court* .[3] Echeverria-Ruiz in the same section of the plea agreement expressly waived his right to collaterally attack his conviction and the resulting sentence pursuant to 28 U.S.C. § 2255 except for the limited purpose of challenging the professional competence of his attorney.[4] Following a change of plea hearing, the District Court found that Echeverria-Ruiz had voluntary and knowingly entered his plea of guilty to both charges and that a factual basis existed for his plea.[5] Sentencing was held on January 20, 2011.

The Presentence Investigation Report prepared by the US Probation Office prior to sentencing determined that the base offense level for count 1 (drug trafficking) was found in § 2D1.1 of the United States Sentencing Guidelines (USSG).[6] Using the Drug Quantity Table of § 2D1.1(c)(4) for more than 5 kg but less than 15 kg of cocaine, adjusted by §3B1.2 (Mitigating Roll), Echeverria-Ruiz was assessed an Adjusted Offense Level of 26 for count 1 of the indictment.  Count 2 (Illegal Reentry) was calculated for the 8 U.S.C. § 1326 violation by using § 2L1.2 of the USSG.  Because Echeverria-Ruiz had been previously deported after two prior drug trafficking convictions which resulted in a sentence of 5-years of imprisonment his Adjusted Offense Level for count 2 totaled to 24.  Using the higher Adjusted Offense Level for count 1 Echeverria-Ruiz received a Combined Offense Level of 28 pursuant to USSG § 3D1.4.

The Presentence Investigation Report then applied the career offender provisions of § 4B1.1(a) of the sentencing guidelines.  Because count 1 of the indictment involved a controlled substance offense and Echeverria-Ruiz had at least two prior felony convictions for controlled substance offenses based on (1) his August 18, 2003 conviction in Clark County District Court

---

[3] (DN, 134, p. 10, ¶ 12) (original emphasis).

[4] Id.

[5] (DN 136, Order)

[6] (DN 177, PSR p.  7, ¶ 43) (sealed).

located in Las Vegas, Nevada in Case No. C193051X for Possession of a Controlled Substance with Intent to Sell; and (2) his May 10, 2004 conviction in Maricopa County Superior Court located in Phoenix, Arizona for Possession of Dangers Drugs For Sale in Case No. CR-2003-014314-001DT, he received a Total Offense Level of 34.[7]

Based on Echeverria-Ruiz's adult criminal history score of 5 points, he received a history category of III, which due to his status as a career offender under USSG § 4B1.1(a) resulted in a category VI.[8] Echeverria-Ruiz's combined total offense level and criminal history category resulted in an applicable sentencing guideline range of 262-327 months of imprisonment, or approximately 22-to-27 years.[9] At sentencing the District Court imposed a substantially lower 120-month sentence;[10] the mandatory-minimum term of imprisonment, which it concluded was "the lowest term authorized by statute and remained sufficient but not greater than necessary to satisfy the purposes of sentencing."[11] Echeverria-Ruiz did not take a direct appeal from the Judgment of Conviction entered on January 24, 2011.[12] Instead, more than 5 years later, on September 15, 2016 he filed his current motion to vacate pursuant to 28 USC 2255.[13]

---

[7] (Id. at p. 8, ¶ 61).

[8] Id. at p. 11, ¶ 69.

[9] (DN 177,  PSR p. 12, ¶ 85).

[10] (DN 176, Judgment, p,3).

[11] (DN 254, Order Denying Motion for Sentence Reduction).

[12] Echeverria-Ruiz did subsequently file an unsuccessful motion to reduce his sentence pursuant to 18 USC 3582(c)(2) based on Amendment 782 to the United States Sentencing Guidelines Manual.  (DN 236, Motion to Reduce Sentence).  The District Court denied this motion by order entered on April 29, 2015 (DN 254, Order). Echeverria-Ruiz attempted to appeal the denial of his motion, but because he filed his notice of appeal prior to the entry of the final and appealable order the Sixth Circuit dismissed his appeal for lack of jurisdiction.  (DN 256, Sixth Circuit Order of Dismissal).

[13] (DN 267, Motion to Vacate).

Echeverria-Ruiz in his motion to vacate relies on the "new rule" announced in *Johnson v. United States*, ___ U.S. ___,135 S. Ct. 2551, 192 L.Ed.2d 569 (2015) made retroactive on collateral review by *Welch v. United States*, ___ U.S.___, 136 S. Ct. 1257, 194 L.Ed2d 387 (2016). Essentially, he argues that the definition of "crime of violence" contained in § 4B1.2(a) of the Federal Sentencing Guidelines at the time of his sentencing is unconstitutionally vague for the same reasons that the "residual clause" of 18 USC § 924(e)(2)(B)(ii) was held to be so in *Johnson*. He consequently concludes that he was improperly sentenced as a "career offender" under USSG § 4B1.1.

Echeverria-Ruiz argues in similar fashion that his 8-level sentencing enhancement pursuant to 8 U.S.C§ 1326(b)(2), as applied by USSG § 2L1.2(b)(1)(C), is equally invalid for the same reasons as those set forth in *Johnson.* This is so Echeverria-Ruiz explains because the statutory definition of "aggravated felony" relied on by both § 1326(b)(2) and § 2L1.2(b)(1)(C) as found in 18 U.S.C. § 1101(43)(f) incorporates the definition of "crime of violence" contained in 18 U.S.C. 16(b), a definition that contains the very same residual clause language of 18 U.S.C. § 924(e)(2)(B)(ii)condemned by *Johnson*.

The United States responds with two arguments.[14] First, the government argues that the federal courts should not address the substance of either of Echeverria-Ruiz's arguments. Its position on the matter is that Echeverria-Ruiz expressly waived his right to collaterally attack his sentence as part of a Plea Agreement that ultimately resulted in a highly favorable sentence. The government therefore asks the Court to enforce paragraph 12 of the agreement and dismiss the motion to vacate without considering its merits. Second, the government contends that if this Court does reach the substance of Echeverria-Ruiz's *Johnson*-based arguments, we should summarily reject them because none of the prior state drug offenses relied on to enhance the

---

[14] (DN 277, Motion to Dismiss, pp. 2-8).

challenged sentence falls within the residual clause of 18 U.S.C. § 16 or § 4B1.1 so that *Johnson* simply does not apply to his case.  Because *Johnson* does not apply, the extended statute of limitation contained in 28 USC 2255(f)(3) likewise is inapplicable with the result that the 1-year limitation time period of 2255(f)(1) expired in early February of 2012, more than four years before Echeverria-Ruiz filed his current § 2255 motion to vacate. Because we agree with the United States on the first proposition we recommend that the petition be dismissed with prejudice based on the waiver provisions of Echeverria-Ruiz's plea agreement and that Echeverria-Ruiz be denied a certificate of appealability as to all issues.

## CONCLUSIONS OF LAW

### I.

### Standard for Post-conviction Relief

A motion to vacate brought by a federal prisoner pursuant to 28 U.S.C. §2255 must set forth one or more of three possible grounds for relief.  *See United States v. Doyle*, 631 F.3d 815, 817-18 (6th Cir. 2011); *Calloway v United States*, 3:13CV-75-CRS/3:07CR-25-CRS, 2016 WL 3094028 at *4 (W.D. Ky. June 1, 2016)(same).  The motion may allege an error of constitutional magnitude, allege that the defendant's sentence fell outside the statutory limits, or maintain that a fundamental error of fact or law occurred that rendered the entire criminal proceedings invalid. Id.(citing *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).  *See also, United States v. Addonizio*, 442 U.S. 178, 185-86 (1979).  "A § 2255 motion may not be used to re-litigate an issue raised on appeal absent highly exceptional circumstances." *Dupont v. United States,* 76 F.3d 108, 110 (6th Cir. 1996). Additionally, an issue which has been defaulted at trial or on direct appeal may not be litigated in a § 2255 collateral attack unless the defendant shows cause and actual prejudice. *Murr v. United States*, 200 F.3d 896, 900 (6th Cir. 2000), citing

*United States v. Frady*, 456 U.S. 152, 164-65 (1982). Actual prejudice can be shown by establishing a reasonable probability of a different outcome on appeal had the issue been raised. *United States v. Fields*, No. 3:14CV-616-JGH, 2015 WL 1259050 (W.D. Ky. March 18, 2015).

## II.

### Period of Limitation

The one year period of limitation imposed by § 2255(f) runs from the latest of four possible events: (1) the date on which the judgment of conviction becomes final; (2) the date on which any unlawful impediment to making the motion that was created by the government is removed; (3) the date on which the constitutional right asserted by the movant was newly recognized by the Supreme Court and made retroactively applicable to those cases pending on collateral review; and (4) the date on which the facts supporting the motion to vacate could have been discovered through the exercise of due diligence. 28 USC § 2255(f)(1)-(4).

A criminal defendant's conviction will become final upon the conclusion of direct review. *See Sanchez–Castellano v. United States*, 358 F.3d 424, 426 (6th Cir.2004) (citing *United States v. Cottage*, 307 F.3d 494, 498 (6th Cir.2002)). If the defendant takes a direct appeal to the Sixth Circuit, then the judgment of conviction will become final for the purpose of 2255(f) when the 90-day period of time in which to petition for certiorari to the U.S. Supreme Court expires without a petition being filed, upon denial of the petition if one is filed, or when the Supreme Court affirms a conviction on the merits. *Clay vs. United States* 537 U.S. 522, 527 (2003) ("Finality attaches in that setting when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). If the defendant does not appeal to the Sixth Circuit, the judgment of conviction will become final upon the expiration of the time in which the defendant could have

filed an appeal, 14-days after entry of the judgment. Fed. R. App. P. 4(b)(1)(2011).  *See Johnson v. United States*, 457 Fed. Appx.  462, 464-65 (6th Cir. Jan. 23, 2012).

In the present case, Echeverria-Ruiz relies upon subsection (f)(3) of the statute and the "new rule" provision, which begins the running of the limitation time period from the date on which the right asserted by the federal prisoner was initially recognized by the Supreme Court and made retroactive to cases on collateral review.  28 U.S.C.§  2255(f)(3).  *See, Dodd v. United States*, 545 U.S. 353, 357–58 (2005); *Jamieson vs. United States*, 692 F.3d 435, 439 (6th Cir. 2012).  Because the US Supreme Court rendered the *Johnson* decision on June 26, 2015 and subsequently made it retroactive on collateral review in *Welch*, Echeverria-Ruiz reasons that his initial motion to vacate signed on June 16, 2016 and filed nearly 3-weeks later on July 5, 2016[15] was timely filed irrespective of the fact that his judgment of conviction became final on February 9, 2012 some four years earlier.

We agree with Echeverria-Ruiz that his 2255 motion to vacate is timely filed irrespective of the merits of his arguments as they relate to the *Johnson* decision.  The United States has argued, persuasively in the view of the Court, that *Johnson* does not apply given that the "aggravated felonies" involved were all controlled substance offenses and not "crimes of violence" affected by the holding of *Johnson*.[16]  Irrespective of whether that may be so, it does

---

[15] (DN 260, Motion for Permission to File 2255 Motion).  The District Court construed this motion, which requested leave to file a 2255 motion,  as being a motion to vacate pursuant to 28 U.S.C. §2255.  (DN 266, Order).  The postal stamp date on the envelope confirms that the motion was mailed from the institution where Echeverria-Ruiz was then housed on June 17, 2016 (DN 261, Motion to Appoint Counsel).  Thus, according to the "mailbox rule" established by *Houston v. Lack*, 487 U.S. 266, 270 (1980), the motion shall be deemed filed on the date of delivery to the prison officials, thereby rendering Echeverria-Ruiz's initial motion to vacate timely filed nine days prior to the expiration of the extended limitation period assuming that the requirements of § 2255(f)(3) are otherwise met.

[16] *See United States v. Massengill*, 2016 WL 4014996 at *3 (E.D. Ky. July 5, 2016)(defendant's prior drug trafficking offense, which met the definition for a "controlled substance offense" fully supported his career offender status under 4B1.1(a) and was not a "crime of violence" subject to *Johnson* analysis); *Mederos-Burgos v. United States*, 2016 WL 6927440 at *2 (W.D. Mich. Nov. 28, 2016)(*Johnson* did not apply where defendant's prior California cocaine trafficking conviction  was a controlled substance offense that satisfied the definition for an aggravated felony under § 1101(a)(43)(B)).

not make the motion to vacate untimely for the purposes of 2255(f)(3), which depends on the "right asserted" by the federal prisoner not on whether the prisoner's claim to that right is ultimately determined to be meritorious.  See *Manners vs. United States*, No. 06-20465, 2016 WL 4801238 at *2 n.1 (E.D. Mich. Sept.  14, 2016); *United States v. Waagner*, 2016 WL 2853563 at *4 (S.D. Ohio May 16, 2016)(finding that the district court had jurisdiction under 28 U.S.C. 2255(f)(3) to consider the federal prisoner's otherwise timely, but meritless, *Johnson* claims).

### III.

### PLEA AGREEMENT WAIVER

The United States in its Motion to Dismiss argues initially that the federal courts should not address the merits of Echeverria-Ruiz's motion to vacate.  According to the government, Echeverria-Ruiz knowingly and voluntarily waived his right to appeal and to bring the present collateral attack when he entered into the plea agreement that led to his guilty plea on October 13, 2010.  The government reasons that, having accepted the benefits of the plea agreement, Echeverria-Ruiz cannot now avoid the consequences of his own binding promises, which include the aforementioned waivers.  Accordingly, the United States concludes that it should not be put to the unnecessary burden of further addressing the substance of his *Johnson*-based sentencing claim.  *See United States v. Cocker*, 514 F.3d 562, 574 (6th Cir. 2008); *United States v. Bazzi,* 94 F.3d 1025, 1028 (6th Cir. 1996). We agree.

Paragraph 12 of Echeverria-Ruiz's plea agreement provides that:

Defendant is aware of his right to appeal his conviction and that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  The Defendant knowingly and voluntarily waives the right to directly appeal his conviction and the resulting sentence pursuant to Fed. R. App. P. 4(b) and 18 U.S.C. 3742.  However, the Defendant shall maintain his right to appeal the sentence imposed *only* if the Court departs from the applicable advisory guideline range, *as*

8

*determined by the Court*.  **Defendant, except for the limited purpose of challenging the competence of his attorney, expressly waives the right to contest or collaterally attack his conviction and the resulting sentence pursuant to 28 U.S.C. § 2255 or for any other reason**.  Defendant understands and agrees that nothing in this plea agreement should be construed as a waiver by the United States of its right to appeal the sentence under 18 U.S.C. § 3742.

(DN 134, Plea Agreement, p. 10, ¶ 12)(bold emphasis added).

The question now, in light of the highlighted language above, is whether Echeverria-Ruiz may successfully maintain the present post-conviction challenge to his sentence.  This question has divided the federal courts, not only within the Sixth Circuit, but outside it as well.  A thorough review of the available decisions, however, reveals that a growing majority of the federal courts will enforce such plea agreement waivers to preclude *Johnson*-based collateral attacks so long as they are knowingly and voluntarily made and do not result in a miscarriage of justice. The position of our own Circuit on the matter until recently has been somewhat unsettled, a circumstance confirmed by the entry two differing appellate decisions, *United States v McBride*, 826 F.3d 293 (6th Cir. 2016), *cert denied* 2017 WL 276215 (Jan. 23, 2017) rendered on June 10, 2016 and *In re Dontrell Garner*, ___ Fed. Appx. ___ , 2016 WL 6471761 (6th Cir. 2016) rendered some five months later on November 2, 2016. *McBride* and *In re Garner,* along with the Sixth Circuit case law that preceded them, deserve substantial consideration if one is to properly resolve their disparate views on the question of plea agreement waivers in the post-*Johnson* world and to fully appreciate the most recent pronouncement of the Sixth Circuit on the matter, *United States v. Morrison*, 2017 WL 360553 at *3 (6th Cir. Jan. 25, 2017).

A.   **The Pre-*Johnson* Law of Waiver in the Sixth Circuit**

The law is clear, at least in principle if not always in operation, that a criminal defendant may waive any right, statutory or constitutional, in a plea agreement as long as the waiver is both

voluntary and knowing.  *Coker*, 514 F.3d at 573 ("A defendant may waive any right, including a constitutional right, in a plea agreement so long as the waiver is knowing and voluntary.") (citing *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004)).  *See gen., United States v. Mezzanatto*, 513 U.S. 196, 201 (1995) ("A criminal defendant may knowingly and voluntarily waiver many of the most fundamental protections afforded by the Constitution."); *Peretz v. United States*, 501 U.S. 923, 936 (1991) ("The most basic rights of criminal defendants are ... subject to waiver.").

Over twenty years ago in *Palmero v. United States*, 101 F.3d 702 (6th Cir. 1996) (available on Westlaw at 1996 WL 678222), the Sixth Circuit confirmed for the first time that a defendant may validly waive the right to seek post-conviction § 2255 relief in a plea agreement so long as such waiver is knowing and voluntary.  Three years later in *Watson v. United States*, 165 F.3d 486, 488-89 (6th Cir. 1999) the Sixth Circuit re-affirmed its earlier view on such waivers in a published decision.  *Id.* ("[W]e hold that a defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief.").

More recently, in *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001), the Sixth Circuit explained that, "[w]hen a defendant knowingly, intelligently and voluntarily waives the right to collaterally attack a sentence, he or she is precluded from bringing a claim of ineffective assistance of counsel based on 28 U.S.C. §2255." *Id.*  Accordingly, if an examination of the totality of the circumstances surrounding the present waiver reveals that Echeverria-Ruiz fully understood the nature of the rights being surrendered and how such a waiver would generally apply, then his waiver will be held to be knowing and voluntary.[17]  *See United States v. Ruiz,* 536

---

[17] Echeverria-Ruiz does not contend that his plea agreement waiver was unknowing or involuntary. The District Court at the change of plea hearing held on October 13, 2010 determined that Echeverria-Ruiz knowingly and voluntarily entered his change of plea and plea agreement with full awareness of its consequences and the potential penalties (DN 136, Order).

U.S. 622, 629 (2002); *Berry v. Mintzes*, 726 F.2d 1142, 1149 (6th Cir.) *cert denied*, 467 U.S.

1245 (1984). The question of whether, after *Davila*, such an otherwise knowing and valid waiver

applies to "new rules" of constitutional law not in existence on the date on which the plea

agreement was executed, however, is a question which arguably was until very recently

unresolved in this Circuit, at least in the context of *Johnson*, and one which brings into focus

*McBride* and *In re Garner*.

**B.    The *McBride* decision**

The first decision, *McBride,* involved an accused Ohio bank robber charged with six

counts of bank robbery committed in five jurisdictions in violation of 18 USC § 2113(a), (d).

*McBride*, 826 F.3d at 294.  Following his indictment, Defendant McBride entered into a plea

agreement with the United States in which he agreed to be sentenced as a "career offender"

under the provisions of USSG § 4B1.1(a) because "he ha[d] at least two prior crime of violence

convictions."  *Id*.  His presentence report recommended such a career offender designation based

on two prior bank robbery convictions; and, McBride in his sentencing memorandum and at

sentencing did not dispute that he was a "career offender."  As such, the Sentencing Guidelines

set forth an advisory range of 188 to 235 months of imprisonment, a guideline range well in

excess of the 100 to 125 months otherwise applicable absent career offender enhancement.  The

District Court ultimately sentenced McBride to 216 months of imprisonment.  *Id*.

Not long thereafter, the U.S. Supreme Court rendered its decision in *Johnson vs. United

States*, 135 S. Ct. 2551 (2015).  This turn of events led Defendant McBride to bring a direct

appeal to challenge his sentence arguing that bank robbery under § 2113 was no longer a

predicate offense that would qualify him for "career offender" enhancement status under USSG

§ 4B1.2(a)(2), given the similarity of its language to the residual clause of 18 USC §

924(e)(2)(B)(ii) declared by *Johnson* to be unconstitutionally vague.  The United States in response raised the question of whether McBride had knowingly and voluntarily waived the opportunity to challenge his career offender status via *Johnson* by the terms of his plea agreement, which unlike the present one of Echeverria-Ruiz did not expressly waive the right to appeal or to bring a post-conviction attack pursuant to 28 USC § 2255.

The Sixth Circuit panel unanimously concluded that McBride had waived any challenge to his career offender designation "except insofar as it could not have been made before *Johnson*."  *McBride*, 826 F.3d at 294-95.  In other words, the panel limited McBride's waiver to only pre-*Johnson* challenges to his career offender status under the sentencing guidelines, while permitting his *Johnson*-based arguments to proceed under a plain error standard.  To quote the Sixth Circuit on this point,

> McBride waived this argument, except insofar as it could not have been made before *Johnson*. A defendant waives \*295 the argument that a sentencing enhancement does not apply by "explicitly agreeing" that it does, such as through "plain, positive concurrence." *United States v. Knox*, 593 Fed.Appx. 536, 536, 537 (6th Cir. 2015); *see also United States v. Mabee*, 765 F.3d 666, 671 (6th Cir. 2014); *cf. United States v. Priddy*, 808 F.3d 676, 681 (6th Cir. 2015). Statements in the plea agreement (that he signed) and the sentencing memorandum (that counsel submitted on his behalf) demonstrate that McBride agreed with a career-offender designation. In addition, counsel reiterated that position at the sentencing hearing. However, a defendant can abandon only "known right[s]." *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (emphasis added). McBride could not have intentionally relinquished a claim based on *Johnson*, which was decided after his sentencing. *See United States v. Stines*, 313 F.3d 912, 917–18 (6th Cir. 2002); *United States v. Rogers*, 118 F.3d 466, 471 (6th Cir. 1997). Although McBride otherwise waived the right to appeal his career-offender status, to the extent that his claim relies on *Johnson*, we review for plain error. *Priddy*, 808 F.3d at 682.

*McBride*, 826 F.3d at 294-95. *See United States v Fugate*, 2016 WL 5387697 at \*3-4 (S.D. Ohio Sept. 27, 2106) ("Fugate cannot be deemed to have forfeited a claim which had not yet arisen when he pleaded and was sentenced.")(citing *McBride*, *supra*)

This approach at first blush might seem to suggest that a criminal defendant who enters into a Rule 11 plea agreement may only knowingly and voluntarily surrender then existent rights, be they statutory or constitutional, so that subsequent, favorable developments in the law remain unaffected by the waiver terms of a plea agreement.  What the *McBride* decision does not do, however, is address the consequences of a plea agreement waiver of the right to bring a collateral attack, rather than the waiver of a specific right. *See, United States v. Wall*, 2017 WL 193549 at *1-2 (E.D. Mich. Jan. 18, 2017)(drawing a distinction between the Guidelines-specific waiver of *McBride* and a "broad appeal/collateral attack waiver" such as that discussed in *United States v Alford*, 436 F.3d 677, 679 (6th Cir. 2006)).

Unlike Echeverria-Ruiz, Defendant McBride nowhere surrendered his right to either a direct appeal or to collaterally attack his sentence.  Several district courts in this Circuit such as *Wall* have relied on this very distinction to limit the scope of *McBride* to those criminal cases which do not involve plea agreement waivers of the right to appeal or to collateral attack.  *Bolton v. United States*, No. 312-CR-101-TAV-CCS-14, 2017 WL 325253, at *4 (E.D. Tenn. Jan. 23, 2017) ("Petitioner's reliance on the *McBride* decision is misplaced because, as Judge Sutton explained in *In re Garner*, "the defendant[ ] in [that case] did not sign [a] plea agreement[ ] with provisions waiving [his] appellate and collateral review rights."); *Kinnear v. United States*, No. 3:13-CR-67-TAV-HBG-2, 2017 WL 238432, at *3 (E.D. Tenn. Jan. 19, 2017), *judgment entered*, No. 3:13-CR-67-TAV-HBG-2, 2017 WL 277508 (E.D. Tenn. Jan. 19, 2017) (same); *Bright v United States*, No. 3:11-CR-141-TWP-CCS, 2017 WL 177628 at *3 (E.D. Tenn. Jan. 17, 2017)(same).

These same courts in differentiating *McBride* also have observed that the Federal Rules of Criminal Procedure afford ample room for the parties to such plea agreements to tailor them to

waive the right to appeal or to collateral attack and "the fact that 'developments in the law [have] expand[ed] [Petitioner's forfeited] right [of collateral review]… does not suddenly make [his] plea involuntary or unknowing or otherwise undo its binding nature.'" *Bolton,* 2017 WL 325253 at *4(quoting *United States v. McGlivery*, 403 F.3d 361, 363 (6th Cir. 2005)); *Kinnear*, 2017 WL 238432 at *3(same); *Bright*, 2017 WL 177628 at *3(same). Even so, all of these same district court decisions concede that it is "far from clear" that "waiver of the right to collaterally challenge a sentence can be enforced to bar challenges based on the *Johnson* decision." Id.(*Mefford v. United States*, No. 3:15-cv-575, 2016 WL 1737094, at *1, n. 1 (E.D. Tenn. May 2, 2016); *Cox v. United States*, No. 3:15-cv-362, 2016 WL 552350, at *1, n. 1 (E.D. Tenn. Feb. 10, 2016); *Nance v. United States*, 3:15-cv-387, 2016 WL 527193, at *1, n. 1 (E.D. Tenn. Feb. 9, 2016)). [18]

Most recently, on January 25, 2017, another 3-judge panel of the Sixth Circuit relied on the same distinction to enforce a plea agreement waiver of the right of appeal in the face of a *Johnson*-based argument that the defendant's prior Tennessee burglary conviction did not qualify as a "crime of violence." *See, United States v. Morrison*, 2017 WL 360553 at *3 (6th Cir. Jan. 25, 2017)("[T]he *McBride* plea agreement, unlike the one here, did not include an appeal waiver; *McBride* simply agreed that he qualified as a career offender. Looking past the waiver-inducing effect of such a concession makes sense in those circumstances—after all, McBride could not "have intentionally relinquished" a *Johnson*-based challenge to his career-offender designation "considering [*Johnson*] was decided after [he was] sentenced."")(quoting *United States v Stines*,

---

[18] At least one district court has recognized that *McBride* at a minimum raises a view on which reasonable jurists might disagree so as to justify the issuance of a certificate of appealability to a 2255 movant on the question of the enforceability of prior plea agreement waivers in light of *Johnson*. *See, Hardin v United States*, 2016 WL 7034138 at *4 (N.D. Ind. Dec. 2, 2016)(granting a certificate of appealability on a plea agreement waiver issue while citing *McBride* to observe that "outside developments in the law might encourage the [7th Circuit] to revise its interpretation of whether a defendant can ever waiver rights unknown at the time of the waiver."), *appeal filed*, No. 17-1078 (Jan 12, 2017).

313 F.3d 912, 917 (6th Cir. 2002)). In doing so, the Sixth Circuit panel in *Morrison* relied directly on the next judicial opinion under consideration *In re Garner*, 2016 WL 6471761 at *2 to hold that the defendant therein, "Morrison, on the other hand, could and did intentionally relinquish his right to appeal. In doing so, he assumed the risk that he would be denied the benefit of future legal developments." *Morrison,* 2017 WL 360553 at *3(citing *In re Garner*, 2016 WL 6471761, at *2).

C.   **The** *In Re Garner* **Decision**

Two months prior to *Morrison*, a separate panel of the Sixth Circuit in November of 2016 first distinguished *McBride* in the unpublished decision *In Re Garland Dontrell Garner*, 2016 WL 6471761 (6th Cir. Nov. 2, 2016).  *In re Garner* involved a federal prisoner who sought leave to file a second or successive§  2255 motion to vacate in order to challenge his 110 month sentence pursuant to *Johnson* where the prisoner had previously entered into a plea agreement that waived his right to appeal or to § 2255 relief similar to Echeverria-Ruiz's own plea agreement.  *Id.*  Specifically, Defendant Garner repeatedly attempted to argue following the imposition of his enhanced sentence for being a felon in possession of a firearm that the enhancement of his sentence pursuant to the career offender provisions of USSG § 4B1.2(a) was now improper after *Johnson* because his prior Michigan state conviction for attempted assault no longer qualified as being a "crime of violence" under the sentencing guidelines.  The district court and a panel of the Sixth Circuit rejected Garner's request to file a successive § 2255 motion based on the terms of his plea agreement in which he acknowledged that he waived his right to appeal or to collaterally attack his sentence. *Id.*at *1.

15

In denying Garner leave to file a second 2255 motion, a divided panel in *In Re Garner* held that he had waived his right to challenge his sentence collaterally in his plea agreement, the "new rule" announced in *Johnson* notwithstanding.  The two-member majority explained as follows:

> A defendant's waiver of his right to challenge his conviction and sentence under §
> 2255 is enforceable when it is entered into "knowingly, intelligently, and
> voluntarily." *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001); *see In re
> Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). In *United States v. Bradley*, 400 F.3d
> 459, 463 (6th Cir. 2005), we held that "where developments in the law later
> expand a right that a defendant has waived in a plea agreement, the change in law
> does not suddenly make the plea involuntary or unknowing or otherwise undo its
> binding nature." *See also United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir.
> 2005). Garner, like the defendant in *Bradley*, expressly "waive[d] the right to
> appeal his [ ] conviction or sentence on any grounds" and "knowingly and
> voluntarily waive [d] th[e] right ... to contest his[ ] conviction or sentence in any
> post-conviction proceeding, including—but not limited to—any proceeding under
> 28 U.S.C. § 2255." R. 23 at 7; *see Bradley*, 400 F.3d at 461. In making this
> waiver, he understood "that defendants generally have the right to attack their
> convictions and sentences by filing post-conviction motions, petitions, or
> independent civil actions." R. 23 at 7.
>
> *2 Had Garner predicted the outcome of *Johnson*, it is true, he might not have
> used his rights to challenge his sentence as bargaining chips in the plea
> negotiation. But Garner's lack of clairvoyance cannot undo his decision to waive
> the right to attack his sentence collaterally. His "waiver[ ] of the right to appeal ...
> would amount to little if future changes in the law permitted the benefited party
> nonetheless to appeal." *Bradley*, 400 F.3d at 465. And the Supreme Court made
> clear, many years before Garner pleaded guilty, that "[n]ew substantive rules,"
> such as *Johnson*, "generally apply retroactively." *Schriro v. Summerlin*, 542 U.S.
> 348, 351 (2004). Congress designed § 2255(h)(2) to allow precisely these sorts of
> successive post-conviction motions. Garner nonetheless waived his right to attack
> his sentence collaterally under § 2255. All that matters is that the waiver is
> knowing; it need not be omniscient.

*In Re Garland Dontrell Garner*, 2016 WL 6471761 at *1-2).

The majority acknowledged the *McBride* decision and it's holding that the defendant therein could not have intentionally relinquished a claim based on *Johnson*, a decision rendered after his sentencing, merely by agreeing in his plea agreement with a career-offender

16

designation.  *Id.  McBride*, the majority pointed out, similar to the federal defendants in *Stephens*

and *Priddy*, however, did not involve a situation in which the defendant had signed a plea

agreement that specifically waived his or her right to appeal from or to collaterally attack the

conviction.  *Id* at *2.  In such situations, the majority noted that:

> Best we can tell, all of the courts of appeals, save one, have followed the same
> path after *Booker*. They have enforced appeal waivers to bar *Johnson*
> claims, like *Booker* claims, because "[a]n intervening change in law does not
> render the appellate waiver unknowing or involuntary." *United States v. Agurs*,
> 629 F. App'x 288, 290 n.6 (3d Cir. 2015) (unpublished); *see United States v. Bey*,
> 825 F.3d 75, 83 (1st Cir. 2016) (enforcing appellate waiver to bar Johnson
> challenge); *United States v. Blackwell*, 651 F. App'x 8, 9–10 (2d Cir. 2016)
> (order) (same); *United States v. Ford*, 641 F. App'x 650, 651 (8th Cir. 2016) (per
> curiam) (same); *United States v. Hurtado*, No. 16-2021, 2016 WL 3410270, at *1
> (10th Cir. June 17, 2016) (same); *see also United States v. Torres*, 828 F.3d 1113,
> 1124–25 (9th Cir. 2016) (allowing appeal when the waiver "preserv[ed] the right
> to appeal a determination that the [defendant] qualifies as an Armed Career
> Criminal"). Garner's "willingness ... to waive his right to appeal" and to attack his
> sentence collaterally "binds him no less now than it did when he signed the
> agreement." *Bradley*, 400 F.3d at 466.

*In Re Garland Dontrell Garner*, 2016 WL 6471761 at *2.

The dissenting opinion rendered by Circuit Judge Keith in *In Re Garner* had several

important observations to make about the views of the majority that potentially cast a shadow

over the authoritative weight of its decision.  First, the dissent pointed out that the case was

before the Sixth Circuit on review of a motion for leave to file a second, successive petition that

ordinarily would require lenient review, given that the role of the appellate court in such

situations ordinarily is not to adjudicate the merits, but rather simply to determine if the possible

merit is sufficient to warrant a fuller exploration by the district court. *In Re Garland Dontrell

Garner*, 2016 WL 6471761 at *3 (Keith J.,  dissenting).

Second, the dissent then reviewed the federal cases cited by the majority for its claim that

all of the courts to consider the issue after *Booker* have enforced such appeal waivers to bar

*Johnson* claims.  The cited decisions, the dissent noted, did not involve procedurally similar

cases in which a federal defendant was before an appellate court seeking leave to file a second,

successive petition.  *Id*.  On this point, the dissent elaborated:

> For example, *United States v. Agurs*, 629 F. App'x 288 (3d Cir. 2015) was a
> direct appeal in which the defendant claimed that his plea was involuntary
> because he did not know about a case holding that already existed when he
> entered into the plea agreement. Additionally, *United States v. Bey*, 825 F.3d 75
> (1st Cir. 2016) was a direct appeal in which Defendant did not challenge the
> validity of the waiver and there was no new Supreme Court case which would
> have affected his sentence. Likewise, *United States v. Blackwell*, No. 15-1031,
> 2016 WL 3190569 (2d Cir. 2016) (order) was a direct appeal decided by
> unpublished order. Similarly, *United States v. Ford*, 641 F. App'x 650 (8th Cir.
> 2016) was a direct appeal in which the waiver was enforced, but the defendant did
> not make any argument that the waiver was invalid. Further, *United States v.
> Hurtado,* No. 16-2021, 2016 WL 3410270 (10th Cir. June 17, 2016) was a direct
> appeal in which defendant conceded that the waiver barred appeal. Finally, *United
> States v. Torres*, 828 F.3d 1113, 1125 (9th Cir. 2016) was a direct appeal
> involving no argument challenging the validity of the waiver. However, the court
> in *Torres* nonetheless held that a possibly unconstitutional sentence under
> Johnson would necessarily render the waiver invalid.

*In re Garland Dontrell Garner*, 2016 WL 6471761 at **3-4.

Based on its review, the dissent concluded that "the cases cited by the majority do not

support the notion that a collateral appeal waiver in a plea agreement commands the denial of a

second, successive petition brought in accordance with 28 USC 2244(b) when the petitioner

challenges the very validity of his or her waiver."  *Id*.  Consequently, the dissent ultimately held

that because defendant Garner, in the absence of his plea agreement waiver, made a timely prima

facie showing of relief under *Johnson* where he was sentenced under an identically worded

residual clause found in USSG § 4B1.2(a)(2), and because he additionally challenged the validity

of the collateral appeal waiver in his plea agreement, Garner should have been treated similar to

any other such petitioner and been permitted to proceed in the district court with a successive

2255 motion to be held in abeyance pending the outcome of *Beckles*.

The unusual procedural posture of *In re Garner,* rendered on appeal from an order that denied leave to file a second or successive§ 2255 motion, combined with the well-drafted dissenting opinion of Judge Keith, left open the question of the enforceability of plea agreement waivers such as those agreed to by Echeverria-Ruiz.  Similarly situated federal prisoners, even after *In re Garner,* could potentially continue to challenge their plea agreement waivers while distinguishing *In re Garner* on the basis that (1) the decision exceeded the proper scope of appellate review for a § 2255(h) motion to file a second or successive motion to vacate and (2) relied upon readily distinguishable case authority from outside the Sixth Circuit as the dissenting opinion had concluded.  Accordingly, *In re Garner* while possibly predictive of future appellate rulings did not itself put to rest the enforceability of plea agreement waivers of the right to appeal or to collaterally attack an enhanced sentence following the *Johnson* decision.  Not until recently with *United States v. Morrison*, 2017 WL 360553 at *3 (6th Cir. Jan. 25, 2017) did a Sixth Circuit panel speak definitively to the issue.

**D.   The *Morrison* Decision**

The most recent Sixth Circuit decision to speak to the question of plea agreement waivers and their enforceability after *Johnson* is *United States v. Morrison*, No. 16-5452, 2017 WL 360553 (6th Cir. Jan. 25, 2017).  *Morrison* involved a federal defendant who pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  *Id*.  As part of his plea agreement, the defendant waived his right to appeal "any sentence imposed by the Court…so long as it is within the applicable guideline range, or lower, whatever that guideline range might be."  *Id*.  The district court at sentencing relied on the defendant's prior Tennessee conviction for aggravated burglary to qualify as a "crime of violence" under the Sentencing Guidelines, which

then included the burglary of a dwelling in the definition of "crime of violence" under USSG §§ 2K 2.1 and 4B1.2(a)(2015).

Existing Sixth Circuit case law at the time of the sentencing held the Tennessee aggravated burglary statute to be divisible since it criminalized more conduct than a "generic" burglary statute.  *United States v. Ozier*, 796 F.3d 597, 600-03 (6th Cir. 2015), *abrogated by, Mathis v. United States*, 136 S.Ct. 2243 (2016).  The district court in *Morrison* in reliance on the *Ozier* decision, along with the then-existing language of the Sentencing Guidelines, determined that the applicable enhanced guideline range was 77 to 96 months of imprisonment, after it examined the defendant's plea colloquy from his earlier Tennessee burglary conviction, which confirmed the burglary of a dwelling thereby qualifying the defendant for the career offender status that justified imposition of the enhanced sentence.

Defendant Morrison, who had challenged such status throughout the proceedings, filed an appeal despite the terms of his plea agreement.  *Id*.  While his appeal was pending, the US Supreme Court rendered the *Mathis* decision clarifying the requirements for a statute to be held to be divisible thereby abrogating *Ozier*. *Mathis v. United States*, ___ U.S. ___, 136 S.Ct. 2243, 195 L.Ed. 2d 604 (2016). Additionally, the Sixth Circuit in another case, *United States vs. Stitt*, 646 F. App'x 454 (6th Cir. 2016) granted rehearing in banc during this same time to re-examine whether Tennessee's aggravated-burglary statute criminalizes more conduct than generic burglary under the Armed Career Criminal Act, and if so, whether it is divisible after *Mathis*. Given these developments, *Mathis* and *Stitt*, Defendant Morrison attempted to argue on appeal that his underlying Tennessee aggravated burglary conviction no longer qualified as a "crime of violence" under the Guidelines so that his 96-month sentence was rendered invalid by legal developments that occurred following entry of his guilty plea.

The Sixth Circuit panel unequivocally rejected Morrison's efforts in this regard based on the appeal waiver language in his plea agreement.  Writing for a unanimous court, Judge Cook explained that:

> We will enforce an appeal waiver included in a plea agreement when the agreement is made knowingly and voluntarily. *United States v. Toth*, 668 F.3d 374, 378 (6th Cir. 2012) (citing *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001)). Morrison may challenge his waiver of appeal rights only "on the grounds that it was not knowing and voluntary, was not taken in compliance with Fed. R. Crim. P. 11, or was the product of ineffective assistance of counsel." *United States v. Detloff*, 794 F.3d 588, 592 (6th Cir. 2015) (quoting *United States v. Atkinson*, 354 F. App'x 250, 252 (6th Cir. 2009)).
>
> Here, Morrison makes no effort to undermine the voluntariness of his plea agreement, nor does he assert a violation of Federal Rule of Criminal Procedure 11. Our independent review of Morrison's plea hearing confirms that he voluntarily waived his appellate rights. The district court informed Morrison that he was giving up his right to appeal any sentence within the guideline range, and explained the few narrow exceptions to that waiver (ineffective-assistance-of-counsel or prosecutorial-misconduct claims). When asked if he understood, Morrison said "Yes, sir."
>
> Morrison instead relies on the change wrought by *Mathis* to maintain that he could not knowingly waive his right to appeal. It is well settled, however, that a change in law cannot render a plea agreement unknowing. *See Brady v. United States*, 397 U.S. 742, 757 (1970); *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005) ("[W]here developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature."). This rule reflects the sound judgment that a plea agreement, like any other contract, allocates risk. *Bradley*, 400 F.3d at 464. By waiving the right to appeal, a defendant assumes the risk that a shift in the legal landscape may engender buyer's remorse. *Id.*; *see also United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005) ("The possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements.").
>
> Accordingly, courts will enforce appeal waivers even when a legal development makes it likely that the defendant would receive a lower sentence were the defendant resentenced under the new law, and even when the legal change affects constitutional rights. For example, when the Sentencing Commission lowered the base offense levels for many drug offenses in 2008 and 2014, defendants who waived their right to appeal could not benefit from the change. *See, e.g., United States v. Ellison,* No. 16-5085, 2016 WL 6818855, at *2 (6th Cir. Nov. 18, 2016) (per curiam); *United States v. Marquez*, 570 F. App'x 816, 818–19 (10th Cir.

2014) (per curiam); *United States v. Polly*, 630 F.3d 991, 1002 (10th Cir. 2011). Similarly, after the Supreme Court voided for vagueness the "residual clause" in the ACCA's definition of "violent felony," *see Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015), courts routinely enforced the appeal waivers of prisoners who stood to benefit. *See, e.g., Sanford v. United States*, 841 F.3d 578, 579–80 (2d Cir. 2016) (per curiam); *In re Garner*, No. 16-1655, 2016 WL 6471761, at *2 (6th Cir. Nov. 2, 2016); *United States v. Hurtado*, No. 16-2021, 2016 WL 3410270, at *1 (10th Cir. June 17, 2016) (per curiam); *United States v. Bey*, 825 F.3d 75, 83 (1st Cir. 2016); *United States v. Blackwell*, 651 F. App'x 8, 10 (2d Cir. 2016) (per curiam); *United States v. Ford*, 641 F. App'x 650, 651 (8th Cir. 2016) (per curiam). Although Morrison understandably regrets waiving his appellate rights in light of *Mathis* and *Stitt*, his "lack of clairvoyance cannot undo [that] decision." *In re Garner*, 2016 WL 6471761, at *2.

*Morrison,* 2017 WL 360553 at *2.

The Sixth Circuit in *Morrison* then continued to address the question of whether the *McBride* decision called into question the enforceability of the appeal waiver contained in Morrison's plea agreement. Once again, the panel unequivocally rejected *McBride* as authority for ignoring the preclusive effect of a plea agreement waiver of the right to appeal, explaining that:

> In an effort to circumvent his appeal waiver's preclusive effect, Morrison invokes *United States v. McBride*, 826 F.3d 293 (6th Cir. 2016). In *McBride*, the defendant's plea agreement included an "understanding" that he would be sentenced as a career offender because "he ha[d] at least two prior crime of violence convictions." *Id*. at 294 (alteration in original). McBride appealed his sentence following *Johnson*, arguing that his prior offense for bank robbery no longer qualified as a crime of violence. *Id*. at 295. Although we recognized that McBride's consent to his career-offender designation would normally waive his right to challenge it on appeal, we nonetheless reviewed for plain error, reasoning that "McBride could not have intentionally relinquished a claim based on Johnson[.]" *Id*.

> But the *McBride* plea agreement, unlike the one here, did not include an appeal waiver; McBride simply agreed that he qualified as a career offender. Looking past the waiver-inducing effect of such a concession makes sense in those circumstances—after all, McBride could not "have intentionally relinquished" a *Johnson*-based challenge to his career-offender designation "considering [*Johnson*] was decided after [he was] sentenced." *United States v. Stines*, 313 F.3d 912, 917 (6th Cir. 2002); *see also McBride*, 826 F.3d at 295. Morrison, on the other hand, could and did intentionally relinquish his right to appeal. In doing

so, he assumed the risk that he would be denied the benefit of future legal developments. *See, e.g., In re Garner*, 2016 WL 6471761, at *2.

*Id*. at *3. *See Wall*, 2017 WL 193549 at *2(reversing its earlier reliance on *McBride* as being error where the defendant in *Wall* in his plea agreement waived his right to collaterally attack his sentence rather than making a mere Guidelines-specific waiver such as in *McBride*).

After *Morrison* there can be little dispute that plea agreement waivers of the right to appeal or to collateral attack will be enforced in the Sixth Circuit even when subsequent events or decisions of the U.S. Supreme Court, such as *Johnson* or *Mathis*, potentially enlarge the affected defendant's constitutional or statutory rights. So long as the plea agreement and its waiver provisions were knowingly and voluntarily entered into by the defendant, and the entry of the guilty plea and acceptance of the agreement by the District Court was in accord with Rule 11 of the Federal Rules of Criminal Procedure, rather than the product of ineffective assistance of counsel, the waiver of the right to appeal or to collateral attack will be upheld absent a miscarriage of justice, *Johnson* notwithstanding. *Morrison,* 2017 WL 360553 at *2-3; *Wall*, 2017 WL 193549 at *2("This circuit's *Booker* cases teach that an error can "seriously affect the fairness, integrity, or public reputation of the judicial proceeding" without establishing a miscarriage of justice that is sufficient to set aside a collateral attack waiver.").

The reasons for this result become obvious when one considers the nature of plea agreements and the promises contained therein. Both parties bargain for finality and, for the defendant, the possibility of a far more favorable outcome on sentencing than at trial. Each party to the agreement enters into a binding contract with the expectation that the promises of the opposing party will be honored and enforced to the full extent that the law permits. If subsequent legal developments were routinely permitted to upend such agreements, they would lose their value to the detriment not only of the parties, but of the courts, as well. Given the

essential reliance of all concerned upon plea agreements and their enforceability, any judicial

policy or authority that undercuts the finality of such agreements, merely because the ever-

changing law subsequently created the possibility of a different outcome absent an otherwise

knowing and valid waiver, would be entirely self-defeating – – a proposition that not only

*Morrison* has recognized, but numerous decisions from other federal circuits as well.


E.        **The Law Outside the Sixth Circuit**

A review of federal appellate court decisions from other jurisdictions confirms that

*Morrison*, *Wall* and *In re Garner* fall readily in line with the majority view that appeal and

collateral attack waivers in plea agreements are enforceable, notwithstanding subsequent

developments of the law, so long as the agreement is voluntary and knowing, taken in

accordance with Rule 11, not the product of ineffective assistance of counsel, and will not result

in a miscarriage of justice.  To date, federal appellate courts in the 1st, 2nd, 3rd, 6th, 7th, 8th, and

10th Circuits have enforced plea agreement waiver provisions similar to those now under

review.[19] That being the case, the only task left at hand in the waiver analysis is to determine

---

[19]  ***See, e.g., United States v Bey***, 825 F.3d 75, 82-83 (1st Cir. 2016)(appeal waiver contained in plea agreement
remained enforceable, despite the clear Guidelines violation after *Johnson*, where defendant freely and intelligently
agreed to waive his right to appeal as reflected in both the agreement and the plea colloquy and denying the appeal
would not work a miscarriage of justice); ***Sanford v. United States***, 841 F.3d 578, 579-81 (2nd Cir. 2016)(assuming
that defendant was sentenced under a Guidelines provision later determined to be unconstitutional after *Johnson*,
defendant's plea agreement waiver of the right to appeal his conviction remained enforceable as "a defendant's
inability to foresee [a change in the law] does not supply a basis for failing to enforce an appeal waiver."); ***United
States v. Agurs***, 629 Fed. Appx 288 (3rd Cir. Oct. 6, 2015)( Defendant's lack of awareness of case that he contended
would provide "strong argument" he was not career offender under Sentencing Guidelines did not render his guilty
plea not knowing and voluntary, and thus did not provide exception to appellate waiver in prosecution for
conspiracy and drug possession.);  ***Morrison***, 2017 WL 360553 at *3("Courts will enforce appeal waivers even
when a legal development makes it likely that the defendant would receive a lower sentence were the defendant
resentenced under the new law, and even when the legal change affects constitutional rights.") ***United States v.
Worthen***, 842 F.3d 552, 554-55 (7th Cir. 2016)(appeal waivers in plea agreements are generally enforceable and
preclude appellate review absent the imposition of a sentence that exceeds the statutory maximum for the crime
committed so that, because defendant's possible invalid sentence enhancement as a "career offender" did not exceed
the statutory maximum, his appeal waiver was valid and enforceable); ***United States v. Ford***, 641 F3d App'x 650
(8th Cir. Mar. 29, 2016)(enforcing a plea agreement appeal waiver in the face of a career-offender *Johnson*-based
challenge where defendant knowingly and voluntarily entered into the waiver and enforcing it would not result in a

whether Echeverria-Ruiz plea agreement wavier of his right to collaterally attack his sentence satisfies the criteria set out in the above-cited decisions for a valid and enforceable waiver. *See Merritt v. United States*, 2016 WL 447729 at *5 (W.D. Tenn. Feb. 4. 2016)(Defendant bears the burden to show by the totality of the circumstances that his plea agreement or resulting plea were unknowing, involuntary or unintelligent).

## F.    Application of the *Morrison* Criteria

Examination of the memorandum of law filed by Echeverria-Ruiz[20] reveals that he does not attempt to challenge the voluntariness of his plea agreement.  He likewise does not assert a violation of Rule 11 of the Federal Rules of Criminal Procedure in the acceptance of his change of plea and plea agreement.  Echeverria-Ruiz does not assert that ineffective assistance of counsel rendered either the plea agreement or his plea of guilty constitutionally invalid.  Finally, he does not argue that the enforcement of his waiver of collateral attack provision in paragraph 12 of the plea agreement[21] will result in a miscarriage of justice.

Instead, his sole arguments are that the subsequent 2015 decision rendered by the US Supreme Court in *Johnson* rendered his "career offender" status under USSG § 4B1.1 invalid because none of his underlying drug convictions continued to qualify as a "crime of violence," given the invalidity of the residual clause language incorporated into § 4B1.2(a)(2); and, that *Johnson* for the same essential reasons rendered his 8-level increase under the "aggravated felony" provisions of § 2L1.2(b)(1)(C) invalid as well.  Because these arguments in no fashion affect the validity of his plea agreement waiver of the right to bring a collateral attack, the Court

---

miscarriage of justice); *United States v. Frazier-LeFear*, No. 16-6128, 2016 WL 7240134 at * 2-3 (10th Cir. Dec. 15, 2016)(enforcing a prior plea agreement waiver to dismiss defendant's 2255 motion in the face of a clear *Johnson* violation under the residual clause of the career offenders guidelines in USSG § 4B1.2(a) where defendant's waiver was knowing and valid and enforcement did not result in a miscarriage of justice);
[20] (DN 267, Motion to Vacate).
[21] (DN 177, Plea Agreement,p. 10, ¶ 12).

must enforce the waiver provisions of the plea agreement to recommend that his current action be dismissed with prejudice.

## G.     Certificate of Appealability

The final question is whether Echeverria-Ruiz is entitled to a certificate of appealability. A state or federal prisoner who seeks to take an appeal from the dismissal of a habeas corpus petition or a motion to vacate must satisfy the COA requirements of 28 U.S.C. § 2253(c).  A COA will be issued only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  Such a substantial showing is made when a prisoner establishes that jurists of reason would find it debatable whether the petition or motion states a valid claim of the denial of a constitutional right or, in the cases in which the petition is resolved based upon a procedural ruling, that jurists could find it debatable whether the district court was correct in its procedural ruling.  *See Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court is required to make an individual assessment of the issues and to indicate which specific issue or issues satisfy the standard of § 2253(c).  *See Stanford v. Parker*, 266 F.3d 442, 450-51 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002).  *See also Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (discussing 28 U.S.C. § 2253(c)).  A prisoner may raise on appeal only those specific issues for which the district court grants a certificate of appealability.  *Powell v. Collins*, 332 F.3d 376, 398 (6th Cir. 2003).

Here, no reasonable jurists could debate whether Echeverria-Ruiz has stated valid claims. None of his arguments run to the validity of the plea agreement waiver of his right to bring the present collateral attack on his sentence. Following *Morrison* little doubt remains about the position of the Sixth Circuit on the enforceability of such waivers.  Subsequent favorable

developments in the law such as *Johnson* simply do not nullify an otherwise valid plea agreement waiver of the right to appeal or to bring a collateral attack. Because reasonable jurists could not conclude otherwise, Echeverria-Ruiz should be denied a certificate of appealability as to all issues as he has failed to make a substantial showing of the denial of a constitutional right.

## RECOMMENDATION

The Magistrate Judge having made findings of fact and conclusions of law recommends that the motion to vacate, set aside or correct be denied with prejudice and that the movant be denied a certificate of appealability for the reasons set forth above.

## <u>NOTICE</u>

Within fourteen (14) days after being served a copy of these proposed Findings and Recommendation, any party who wishes to object must file and serve written objections or further appeal is waived. *Thomas v. Arn,* 474 U.S. 140, 150-51 (1985); *United States v. Walters*, 638 F.3d 947, 949-50 (6th Cir. 1981); 28 U.S.C. § 636(b)(1)(c); Fed. R. Crim. P. 59(b)(2)

Copies to Defendant and Counsel of Record